# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| AIDEN LINDSAY, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AMERICAN RED CROSS,<br><br>　　　　　Defendant. | Case No. 23-cv-05987-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART**<br><br>[Re: ECF No. 13] |

Decedent Michael Lindsay was injured onsite shortly after donating plasma at a Red Cross and died ten days later. Plaintiffs Aiden Lindsay and Katie Lindsay ("Plaintiffs"), the surviving children of Mr. Lindsay, bring five claims against Defendant American Red Cross ("Red Cross") related to his death. ECF No. 11 ("FAC"). Red Cross moves to dismiss Claims One, Two, Three, and Five as time-barred and duplicative. ECF No. 13 ("Mot."); ECF No. 15 ("Reply"). Plaintiffs oppose. ECF No. 14 ("Opp."). The Court held a hearing on May 9, 2024. For the reasons described below, Red Cross's motion to dismiss is GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

## I.   BACKGROUND

On May 28, 2022, decedent Michael Lindsay was a volunteer donating plasma and platelets at the American Red Cross Silicon Valley offices in San Jose, California. FAC ¶ 7. Sometime after he was disconnected from the collection equipment and the donation process was completed, Mr. Lindsay was discovered on the restroom floor of the premises. *Id.* ¶ 8. He was unconscious and showed signs of head trauma. *Id.* Mr. Lindsay never regained consciousness and died of his injuries on June 6, 2022. *Id.* Plaintiffs filed this cause of action on June 5, 2023, alleging the negligence related to his care during and after his plasma donation that resulted in decedent's injury and death. *See* FAC ¶¶ 11, 18, 27, 33–34, 40–41.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III. DISCUSSION

### A. Section 340.5 Applies to Plaintiffs' Claims

To assess the applicable negligence standard and statute of limitations, the Court must first determine whether certain health care statutes and definitions apply. Defendant argues that under California law, Defendant is a health care provider for purposes of this case, and that California Code of Civil Procedure Section 340.5 ("Section 340.5") thus applies for determining the applicable statute of limitations and negligence standard. Mot. at 10. Plaintiffs do not dispute that Defendant is a health care provider, but argue that Section 340.5 does not apply because Defendant was not administering health care when Mr. Lindsay was injured. Opp. at 5.

In 1975, the Legislature enacted the Medical Injury Compensation Reform Act

("MICRA") which, among other things, revised a number of legal rules applicable to professional negligence actions against health care providers. *See Coe v. Superior Ct.*, 220 Cal. App. 3d 48, 50 (Ct. App. 1990). Under MICRA, California statutes define a "health care provider" as:

> (1) "Health care provider" means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. "Health care provider" includes the legal representatives of a health care provider;

*See, e.g.*, Section 340.5. It is well-established that a blood bank is a "health care provider" for purposes of MICRA. *Coe*, 220 Cal. App. 3d at 53. Because the parties do not dispute that Red Cross is a blood bank, the Court finds that Defendant is a "health care provider" as defined in the statute.

Section 340.5 defines a "professional negligence" standard that applies to "health care providers":

> (2) "Professional negligence" means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

California Courts have broadly construed "professional negligence" to mean negligence occurring during the rendering of services for which the health care provider is licensed. *See Canister v. Emergency Ambulance Service, Inc.*, 160 Cal. App. 4th 388, 406–407 (2008); *Flores v. Presbyterian Intercommunity Hospital*, 63 Cal.4th 75, 84. The definition is applied broadly. For example, in *Flores*, the court held that Section 340.5 applied when a hospital patient was injured after a rail on her bed collapsed because the injury resulted from the alleged negligence in the use and maintenance of the equipment needed to implement the doctor's order concerning her medical treatment. *Id.* at 87.

Here, Plaintiffs' five claims allege that Defendant failed to properly monitor and supervise

3

1  decedent immediately following the blood/plasma donation, FAC ¶¶ 11, 18, 27, 33–34, 40–41.
2  Because Defendant is a "health care provider" and Plaintiffs allege that Defendant was negligent
3  in monitoring him after a blood donation, Section 340.5 clearly applies. *Flores*, 63 Cal.4th at 84;
4  Section 340.5.

5        Plaintiffs argue that Section 340.5 does not apply because Defendant was not providing
6  decedent medical care when the accident occurred. Opp. at 5. Even if true, that is not the
7  standard. For example, in *Gutierrez v. Tostado*, a California Court of Appeal held that Section
8  340.5 applied to a claim by a driver who was rear-ended by an ambulance transporting a patient to
9  the hospital because medical care was being provided to a patient in the ambulance, even though
10 the rear-ended driver was not receiving treatment. 97 Cal. App. 5th 786, 793 (2023). Even if
11 Defendant was not providing medical care to decedent when he was injured, the injury occurred
12 while Defendant was providing professional health care services to others.

13       Thus, the Court finds that Section 340.5 applies to all of Plaintiffs' claims.

14     **B.**    **Plaintiffs' Ordinary Negligence Claims Are Duplicative of Their Professional Negligence Claims**
15

16       Having established that Section 340.5 applies to Plaintiffs' claims, the Court next assesses
17 whether that makes certain claims duplicative of one another.

18       Defendant does not move to dismiss Claim Four. However, Defendant makes two
19 arguments: 1) Claim One is improperly duplicative of Claim Four, Mot. at 12; 2) Claims Two and
20 Three are improperly duplicative of Claim Five. *Id.* at 13–15. Plaintiffs respond that "[i]t is well
21 established that plaintiff can plead inconsistent causes of action, different theories of liability
22 based on the same general set of facts." Opp. at 5 (citing *Steiner v. Rowley* (1950) 35 Cal.2d 713,
23 718–19). Defendant also argues, and Plaintiffs do not dispute, that the gravamen of the premises
24 liability claim (Claim Three) is the same to the professional medical negligence claim (Claim
25 Five). Mot. at 13.

26       The issue is whether Plaintiffs' ordinary negligence claims (Claims One, Two, and Three)
27 and medical malpractice claims (Claims Four and five) can be brought as different theories of
28 liability. As the California Supreme Court explained in *Flowers v. Torrance Mem'l Hosp. Med.*

*Ctr.*, "[a]s to any given defendant, only one standard of care obtains under a particular set of facts, even if the plaintiff attempts to articulate multiple or alternate theories of liability." 8 Cal. 4th 992, 998 (1994). Because Defendant is a health care provider, the same "professional negligence" standard defined in Section 340.5 applies regardless of whether a cause of action alleges general or professional negligence. And as discussed above, because Defendant was administering health care at the time of Mr. Lindsay's injury, the standard applies even if Defendant was not administering health care to Mr. Lindsay. *See Gutierrez*, 97 Cal. App. 5th at 793.

Here, Claim One alleges "negligence – wrongful death" and Claim Four alleges "medical malpractice – wrongful death." Both claims allege wrongful death and differ only in the applicable negligence standard. But Section 340.5 and the "professional negligence" standard apply to both claims. Because the negligence standard is the same, the elements of the claims are identical, and Claims One and Four are thus duplicative.

The same "professional negligence" standard applies to the remaining claims as well. Claims Two and Three allege "negligence – survival action" and "premises liability," and Claim Five, alleges "medical malpractice – survival." Defendant argues, and Plaintiffs do not dispute that "the gravamen of the FAC is medical negligence subject to MICRA, not a case of premises liability." Mot. at 15. Because the "professional negligence" standard applies for all three claims, the elements of each claim are the same, so they are also duplicative.

Accordingly, the Court dismisses Claims One, Two, and Three with prejudice as duplicative of Claims Four and Five.

### C. Claim Five is Time-Barred

Finally, Defendant argues that Claim Five is time-barred under Section 340.5's one-year statute of limitations. The parties do not dispute that decedent donated plasma and was injured on May 28, 2022, and that he died of his injuries on June 6, 2022. Compl. ¶¶ 7–8. It is also undisputed that Plaintiffs filed this cause of action on June 5, 2023, more than one-year after May 28, 2022.

Defendant argues that because Plaintiffs filed the complaint more than one year after the injury occurred, Claim Five is time-barred under Section 340.5's one-year statute of limitations.

Plaintiffs do not dispute the dates in question, but argue that the FAC alleges that this action was filed within one year of when Plaintiffs were aware or reasonably should have known of the injury. Opp. at 4. Plaintiffs argue that they have evidence of "delayed discovery, including correspondence documenting their efforts to discover what occurred, requests for medical records, [and] requests to defendant for documents relating to the Incident." *Id.*

Section 340.5 provides that for claims brought against a health care provider, the statute of limitations "shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Section 340.5. The statute commences to run "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation." *Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 101 (1976) (citations and quotations omitted, emphasis in original). One way the statute of limitations can be tolled is the "delayed discovery rule," which the California Supreme Court described in *Fox v. Ethicon Endo-Surgery, Inc.*:

> [U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action. In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis.

35 Cal. 4th 797, 803 (2005).

Plaintiffs acknowledged at the hearing that they did not plead facts that would support application of the delayed discovery rule, but sought leave to amend to add those allegations. The Court therefore grants Defendant's motion to dismiss Claim Five with leave to amend.

\\
\\
\\
\\
\\

6

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss Claims One, Two, and Three as duplicative is GRANTED WITHOUT LEAVE TO AMEND.
2. Defendant's motion to dismiss Claim Five as time-barred is GRANTED WITH LEAVE TO AMEND.

Any amended complaint shall be filed no later than 30 days from the entry of this order. Plaintiffs may only amend consistent with this order. No additional causes of action or parties may be added without leave of the Court.

Dated: May 10, 2024

_____
BETH LABSON FREEMAN
United States District Judge